VINCENT J. MURPHY, TAX COLLECTOR, ETC., PROSECUTOR, v. ESSEX COUNTY BOARD OF TAXATION ET AL., DEFENDANTS.

Submitted May 5, 1942—Decided November 23, 1942.

Before Justices CASE, DONGES and COLIE.

For the prosecutor, *Raymond Schroeder* and *Joseph A. Ward.*

For the defendants, *Wall, Haight, Carey & Hartpence* and *Edward J. O'Mara.*

The opinion of the court was delivered by

DONGES, J. These writs of *certiorari* bring up two determinations of the Essex County Board of Taxation dismissing complaints filed with that body by the City of Newark seeking to include as property omitted from the assessment rolls for the years 1939 and 1940 certain intangible personal

property of the defendant National Biscuit Company. The County Board held that Newark was not the municipality where personal property of the defendant could be assessed for taxation under *R. S.* 54:4-18, which provides:

"Corporations of this state shall be regarded as residents and inhabitants of the taxing district where their chief office is located, and their personal property shall be taxed the same as that of an individual, except as in this chapter otherwise provided."

The National Biscuit Company is a New Jersey corporation having its statutory "principal" or "registered" office in the City of Jersey City. Prosecutor contends that its "chief" office within the meaning of the above section is located in Newark by reason of its business activities in that city.

Dealing with the case upon the theory advanced by the prosecutor we find that the facts are not in dispute. It appears from the stipulation in the record that the National Biscuit Company is engaged in business in forty-five states; that its executive offices are in New York City; that the entire business of the company is controlled from the executive offices.

It further appears that eleven distribution and sales agencies are maintained throughout the State of New Jersey, each operating directly under the New York office.

The business of the company is largely the manufacture and sale of crackers and it maintains thirty-five cracker bakeries, none of which is located in this state. About ten per cent. of its business arises from the manufacture and sale of bread, for which it operates nineteen bakeries one of which is located in this state in the City of Newark.

During the year 1938, 246 persons were employed in the various sales agencies in this state, 34 of whom were in the Jersey City branch and 47 at Newark. In 1939, there were 59 employees at the Jersey City branch and 26 at Newark. At the Newark bakery approximately 250 persons were employed. In 1938 the volume of sales handled through the Newark branch was the largest of any in the state, but in 1939, due to a change in territory included, the volume handled at the Jersey City office was larger than Newark.

It would appear that considering the volume of work and number of employees at the bakery in Newark, together with those employed at the sales agency, this corporation has more activity from a business point of view in Newark than in any other municipality. But does this make its Newark office the "chief" office of the corporation in this state within the meaning of the statute under the rules laid down in the cases? There is nothing in the stipulation about the type or size of the "office" maintained in Newark. A branch bakery and a branch sales agency can be conducted with little or no office establishment. Certainly no executive activities are carried on in Newark. Nor is control of the corporation's operations centered there. The vital acts of the company's existence are daily done and transacted in New York and not in Newark.

The mere fact that volume of sales may be greater in one municipality than in any other within the state cannot be the sole criterion of the location of the "chief" office. This might fluctuate from year to year, making a corporation's personal property taxable one year in one taxing district and the next year in another. We think that the location of a bakery in Newark and the employment of more persons in that municipality than in any other cannot operate to make its Newark office its "chief" office, when the character and importance of its Newark office is not made to appear in any way other than to show the volume of sales and the existence of a bakery.

In the state of facts evidenced in this case, the language of the Court of Errors and Appeals in *City of Newark* v. *State Board of Tax Appeals,* 129 *N. J. L.* 162, is applicable: "On no legal view applied to that factual situation could it be found that the chief office of the corporation for tax purposes was in the City of Newark. Wherefore, it is unnecessary to decide whether, if most of the business of the respondent within this state had been done in the City of Newark, that city rather than the City of Jersey City where the 'principal office' or 'registered office' is located, would be, within the purview of our tax legislation, the 'chief office' of the corporation for tax purposes."

The evidence supports the finding of the County Board that the Newark office is not the "chief" office under the statute, and the determinations of the Board are accordingly affirmed, and the writs dismissed, with costs.